**THE HONORABLE BENJAMIN H. SETTLE**
**Trial Date: 10/20/2020**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| ALLISON N. RANDAL, an individual,<br>          Plaintiff,<br>vs.<br><br>XPO LOGISTICS, INC, a Connecticut<br>corporation conducting business in the<br>State of Washington; MICHAEL D.<br>MICHELENA, an individual employed by<br>XPO LOGISTICS, INC.; J. DOE<br>CORPORATIONS AND/OR<br>ENTITIES 1-5; and J. DOE 1-5, individuals,<br><br>          Defendants. | No. 3:18-cv-06002-BHS<br><br>**PLAINTIFF'S TRIAL BRIEF** |

COMES NOW Plaintiff, Allison Randal, by and through her counsel of record, and submits the following trial brief in this personal injury matter.

## I.     BACKGROUND

**A.  Case Facts**

Ms. Randal was the driver of a Ford Explorer heading southbound on Interstate 5 on the morning of December 23, 2015. Her son, Max Randal, was in the front passenger seat. Ms. Randal, who was visiting from Boston, was in town for a family holiday gathering. As she neared Chehalis,

PLAINTIFF'S TRIAL BRIEF – 1

she slowed and came to a complete stop due to traffic up ahead. A semi-truck was to her right and she watched in her rear-view mirror as the semi-truck behind her, operated by Tillamook County Creamery, slowed, and came to a complete stop. She breathed a sign of relief. Only moments later, another semi-truck, operated by XPO Logistics and driven by Defendant Michael D. Michelena, smashed into the rear of the Tillamook semi-truck behind Ms. Randal's vehicle. The force of the crash caused by Mr. Michelena drove the Tillamook semi-truck into the rear of Ms. Randal's vehicle, which was spun around and crushed into the semi-truck to her right. Ms. Randal's Ford Explorer was crushed between two semi-trucks:



(Photograph of Plaintiff's vehicle)

PLAINTIFF'S TRIAL BRIEF – 2

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  (Photograph of Defendant Michelena's semi-truck)

16  The crash was so violent that, when the first responders approached the XPO truck, they thought

17  Mr. Michelena was dead. All vehicles involved in the crash were destroyed—Ms. Randal's vehicle

18

19  smashed nearly beyond recognition. Ms. Randal's left tibia popped out of her foot and her left

20  calcaneus (heel) was crushed.

21

22                    [SPACE INTENTIONALLY LEFT BLANK]

23
24
25
26
27
28  PLAINTIFF'S TRIAL BRIEF – 3                **WASHINGTON INJURY LAWYERS, PLLC**
                                                1700 7TH AVE, SUITE 2100
                                                SEATTLE, WA 98101
                                                P: (425) 312-3057 | F: (206) 866-0208

(Photograph of Plaintiff's foot after the crash)

**B. Procedural Background**

Plaintiff filed suit against Defendants in December 2018. XPO Logistics and Mr. Michelena admit to causing this crash and the resulting injuries. Mr. Michelena testified at his deposition that he believes Plaintiff should be fully compensated for her injuries:

> **Plaintiff counsel**: I'm sure it's your desire that the people responsible for paying Ms. Randal for her damages will pay every penny she's entitled to?
> **DEF Michelena**: I believe so, yes.

Michelena Depo, p.18:6-10. Mr. Michelena testified that if Defendant XPO chose "not to pay full value" that he will "trust the court to do its job in determining the full and fair value of Ms. Randal's damages". *Id*., p. 18:13-19.

The simple truth is, Defendant XPO refuses to accept full responsibility for all of Ms. Randal's permanent, life-altering injuries, yet they chose not to hire any experts to refute any of

PLAINTIFF'S TRIAL BRIEF – 4

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

Ms. Randal's evidence. Defendant XPO chose not to depose any of Ms. Randal's treating providers to understand Ms. Randal's injuries and treatment. Defendant XPO chose not to depose any of Ms. Randal's experts to understand Ms. Randal's economic and noneconomic damages. Defendant XPO chose not to depose any of Ms. Randal's family members or boyfriend to understand Ms. Randal's damages and injuries. Defendant XPO has had nearly two years to work on this case and has chosen to do absolutely nothing. Instead, they believe their admission of liability and causation will somehow give them "credit" at trial. For these reasons, this case will be going to trial on October 20, 2020.

## II.     DAMAGES

At trial, Plaintiff will be waiving past medical specials. In other words, Plaintiff will not be presenting to the trier of fact a specific amount of medical bills that have been incurred to date. Plaintiff will, however, submit her future economic damages, including medical specials and a future lifecare plan, through her experts, John Cary, MA, CRC, CDMS, VRC, a vocational rehabilitation counselor and life care planner, and William Brandt, CPA, ABV, MBA, CFF, a forensic economist. The total amount of past and future loss of earning capacity is $639,397. The total amount of the lifecare plan, which includes future treatment and accommodations required on a more probable than not basis, is $1,029,378. In total, Plaintiff's future economic damages are $1,668,775.

Ms. Randal is a world-famous keynote speaker and technologist. Her loss of earnings capacity damages are based on Mr. Cary's expert opinion that her inability to participate as consistently in the travel and keynote side of her work as she did before the crash indeed affects her earnings even though she continues to work full-time. Mr. Cary will testify that the significance

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

of this limitation, based on her physical condition caused by the crash, is that she has lost connections to her community and her reputation and career have suffered. The amount of damages Plaintiff is putting forward is a conservative 10% loss of earning capacity because Ms. Randal has done a tremendous job of mitigating her damages to the best of her ability, despite her physical limitations.

In *Ide v. Stoltenow*, 47 Wash.2d 847, 851, 289 P.2d 1007, 1009 (1955), the Supreme Court found that in "determining whether a new trial should be granted because of inadequate damages, the trial court and this court are entitled to accept as established those items of damage which are conceded, undisputed, and beyond legitimate controversy". In this case, Defendants will produce *no witnesses* and will provide *no evidence* that Plaintiff's economic damages are anything other than what Plaintiff claims. Thus, Plaintiff's special damages are beyond legitimate controversy and Plaintiff must be compensated for her economic damages at the full amount of $1,668,775.

Where special damages are allowed, general damages must also be allowed. In *Shaw v. Browning*, the Court stated, "Where the record shows categorically that special damages alone were awarded with no allowance for proved general damages, the additur and a new trial may lie." *Shaw v. Browning,* 59 Wn.2d 133, 367 P.2d 17 (1961). Further, general damages must be commensurate with the amount of special damages allowed. *Lanegan v. Crawford*, 49 Wash.2d 562, 568, 304 P.2d 953, 955 (1956) ("$381 for general damages is so small as to shock one's idea of fair play. We are, therefore, of the opinion that the verdict was so inadequate as to call for relief"). In *Krivanek v. Fibreboard Corp.*, 72 Wn.App. 632, 865 P.2d 527, (Wash.App. Div. 1 1993), the court found the jury's award of $30,000 "nowhere nearly approximates uncontroverted pension and wage losses of approximately $251,939 – $305,732." The court reasoned:

PLAINTIFF'S TRIAL BRIEF – 6

> In determining whether a new trial should be granted because of inadequate damages, the trial court and this court are entitled to accept as established those items of damage which are conceded, undisputed, and beyond legitimate controversy. *Hills v. King*, 66 Wash.2d 738, 741, 404 P.2d 997 (1965); *Singleton v. Jimmerson*, 12 Wash.App. 203, 205, 529 P.2d 17 (1974), *citing King*. Where special damages are undisputed, and the injury and its cause is clear, the court has little hesitancy in granting a new trial when the jury does not award these amounts. *See Jimmerson*. We reverse a jury award of damages which is outside the range of substantial evidence in the record. *Washburn v. Beatt Equipment* Co., 120 Wash.2d 246, 279 – 80, 840 P.2d 860 (1992).

*Id.* at 637. Here, there will be nothing other than defense counsel's arguments to contradict Plaintiff's claimed economic damages. As such, any verdict that does not allow for the full amount of her claimed economic damages and general damages commensurate therewith would be outside the range of substantial evidence in the record.

## III.    OPENING STATEMENTS

Plaintiff may reference Defendants' anticipated defense in opening statement. Such reference is permissible. *See Snyder v. General Electric Co.*, 47 Wash.2d 60, 69, 287 P.2d 108 (1955) ("Anticipating that defense counsel would introduce the film in evidence, plaintiff's counsel referred to it in his opening statement and on several occasions thereafter. It is not error for a plaintiff to anticipate a defense."); *See also Snowhill v. Lieurance*, 72 Wn.2d 781, 782, 435 P.2d 624 (Wash. 1967).

## IV. OTHER ISSUES

**A. Defendant Michelena's Testimony Is Relevant, Even If Liability Is Admitted, and Plaintiff Counsel May Ask Leading Questions per FRE Rule 611(c).**

Plaintiff may use Defendant Michelena's deposition in lieu of live testimony because he is unavailable as that term is contemplated under FRCP 32(a)(4)(B), (C). Mr. Michelena's testimony is not only relevant to assess XPO's credibility, but to understand his admissions against party

PLAINTIFF'S TRIAL BRIEF – 7

interest. He admits he caused the crash, but he also admits that Plaintiff should be paid "every penny" she is entitled to recover for her injuries. He should be allowed his day in Court even if Defendant XPO continues to try to hide him from Plaintiff and the trier of fact. Defendant Michelena also testified to the extreme horror of this crash, which is foundation evidence for the trier of fact to assess Plaintiff's damages. The trier of fact does not assess Plaintiff's damages in a vacuum. All facts must be considered—the circumstances leading up to the crash, how fast Mr. Michelena was traveling, the severity of the crash itself, and what transpired after the crash. It all sets the stage to understand Plaintiff's damages and how and why they are as serious as Plaintiff states they are.

Plaintiff may call the Defendant, an adverse party, in her case-in-chief. An adverse party may be questioned with leading questions: "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Fed. R. Evid. Rule 611(c). Questioning by Plaintiff's counsel – here, in Defendant Michelena's deposition transcript in lieu of live testimony – may be made by leading questions.

**B. Plaintiff Can Choose How To Present Her Evidence, Including Two Medical Experts And Four Lay Witnesses**

Defendants have disclosed no witnesses to present at trial, yet they believe they have a right to tell Plaintiff which of her witnesses should testify and what the contents of Plaintiff's witness' testimony should be. The Court has already stated in ruling on Defendants' Motions In Limine that Plaintiff may present her witnesses in whatever fashion she wishes. Defendants may object at trial if they believe any of the testimony violates the Federal Rules of Evidence. Any exclusion of witness testimony ahead of trial is premature and based on speculation as to what the witness' testimony will be, rather than the testimony itself. If a witness' testimony is found to be

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

cumulative or not relevant, Defendants may object once the testimony has been offered and the Court may rule. Plaintiff certainly does not wish to waste the Court's time and will make sure her witnesses do not provide cumulative evidence.

Plaintiff will present her treating provider, Dr. Michael Brage, who will testify to his diagnosis, treatment, and recommendations for future treatment of Ms. Randal's crash-related injuries, including the three surgeries performed the day after the crash, two weeks later, and nine months later. Plaintiff has sought treatment with Dr. Brage continuously since the date of the crash – and continues to treat with Dr. Brage – so he is the provider who understands Plaintiff's entire course of treatment. This is the reason she has chosen Dr. Brage to testify to her surgeries.



(Photograph of Plaintiff's foot after her first surgery on 12/31/2015)


[SPACE INTENTIONALLY LEFT BLANK]

PLAINTIFF'S TRIAL BRIEF – 9



(Photograph of Plaintiff's foot after her second surgery on 01/21/2016)

Dr. Gary Schuster will testify to the reasonableness, necessity, and relatedness of treatment Ms. Randal obtained from providers other than Dr. Brage, as well as the medical necessity of Plaintiff's lifecare plan, and the permanency of Ms. Randal's injury and restrictions. These opinions are not cumulative. Plaintiff was treated by more than a dozen medical providers and she is only presenting one treater and one medical expert, so, if anything, Plaintiff is being overly efficient considering the extent of her medical treatment for the past 5 years, and continuing. Defendants' FRE 43(j) objection does not apply because Plaintiff has only disclosed one medical expert and a treating provider.

Plaintiff will present four lay witnesses, including her son, Max Randal, her ex-boyfriend, Stefano Rivera, her brother, Jeffrey Martin, and her live-in boyfriend, Matthew Treinish. None of these witnesses will provide cumulative evidence and Plaintiff will be respectful of the Court's time with these witness' testimony and keep judicial efficiency in mind. Plaintiff cannot be the

PLAINTIFF'S TRIAL BRIEF – 10

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

only witness who testifies to her injuries and damages because outside observers may notice life-altering changes Plaintiff has experienced due to Defendant XPO's actions beyond those that Plaintiff herself realizes. Plaintiff is used to her physical and emotional state after the crash, unfortunately, and continues to live with and endure pain on a daily basis. Those closest to her can testify to the changes they have observed, the relationships that have been affected, and they have a right to do so in any personal injury action.

**C. Lay Witnesses Are Competent To Testify As To Plaintiff's Pain And Suffering**

*Bitzan v. Parisi*, 88 Wn.2d 116, 558 P.2d 775, holds:

> There is no reason laymen may not testify as to their sensory perceptions, the weight of the testimony to be determined by the trier of fact. Physical movement by the injured person can be seen and described by a layman with no prior medical training and skill. Furthermore, an injured person may testify to subjective symptoms of pain and suffering and to the limitations of his physical movements.

*Id*. at 121 – 2. ER 803 (a)(1) (present sense impression) and ER 803(a)(3) (then existing mental, emotional, or physical condition), also permit lay witness testimony concerning a plaintiff's pain and suffering.

The Washington Supreme Court has long taken a very liberal view regarding lay testimony about a plaintiff's injuries, permitting testimony on the following matters:

- Before the accident, plaintiff had the appearance of "a healthy-looking man—a strong laborer". After the accident, plaintiff was in an "excited condition" and was in an "impaired condition". *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 641 – 2 (1900).

- Complaints made by plaintiff about the nature and extent of his injuries. *Buell v. Park Auto Transportation Co*., 132 Wash. 92, 96 (1924).

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

- Changes in plaintiff's condition after injury, including particulars of his disposition and physical condition. *Truva v. Goodyear Tire and Rubber Co.,* 124 Wash. 445, 447 (1923).

Finally, FRE Rule 701 permits lay witnesses to testify in the form of opinions when those opinions are "rationally related to the perception of the witness".

**D. The Amount Of Damages May Be Proven Without Mathematical Precision**

Once Plaintiff in an action for damages has established that damages have been incurred, the amount of proof required to establish same is only sufficient evidence to provide the trier of fact with a reasonable basis for estimating the amount of the loss. This rule has been consistently applied by the Washington courts in both personal injury and commercial litigation.

The rule was succinctly stated in *Haner v. Quincy Farm Chemicals, Inc.*, 97 Wn.2d 753, 649 P.2d 828 (1982):

> The rule in Washington on the question of the sufficiency of the evidence to prove damages is: '[T]he fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss.' *Wilson v. Brand S. Corp.*, 27 Wn.App. 743, 747, 621 P.2d 748 (1980). Mathematical exactness is not required. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 476, 403 P.2d 351 (1965).

*Haner*, 97 Wn.2d at 757. In the same case, the Court of Appeals stated:

> Once the fact of damage is established, the precise amount need not be shown with mathematical certainty. Evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture.

*Haner v. Quincy Farm Chemicals, Inc.*, 29 Wn.App. 93, 97, 627 P.2d 571 (1981). Here, Defendants have no evidence to refute any of Plaintiff's damages—not one witness or one expert.

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

The evidence is unrefuted; Plaintiff, therefore, has met her burden of proof and the amount of damages she seeks at trial may be proven without mathematical precision.

**E. Loss Of Enjoyment Of Life Is A Separate Element Of Damages**

The loss of ability to enjoy life constitutes a proper and separate element of damages. In *Parris v. Johnson*, 3 Wn.App. 853, 479 P.2d 91 (1970), the court stated:

> In considering the meaning of the term "disability" we frequently think in terms of impairment of work capacity. That is probably the easiest form of disability to translate into pecuniary loss. There are however other activities which are compensable under the general term of disability. 'Man does not live by bread alone.' Nor does his life consist of solely performing the tasks necessary to buy that bread. In a 24-hour day one third may be devoted to leisure. An impairment of any one of these aspects of life may constitute a disability. For a summary of compensable elements of damage in a personal injury action, *see* 3 L. Furmer, *Personal Injury*, § 3.04 Subsection 1 (1965).

*Parris*, at 859 – 60. In a footnote at page 860, the *Parris* court set forth as one of the elements of compensatory damages for personal injury the "physical disability or what is popularly referred to as the ability to lead a normal life…" In *Blitzan v. Parisi*, the plaintiff's testimony, supported by lay witnesses, was that his back injury had adversely affected his enjoyment of life. For example, his recreational activities. The court held that lay testimony reviewed alone was sufficient to support an instruction on future damages for future disability. In addition, the court held that future damages need only be proved by a preponderance of the evidence rather than by a standard of reasonable medical certainty or probability. *Blitzen* at 116. In *Archibald v. Gossard*, 65 Wn.2d 486, 494, 397 P.2d 851 (1965), the court held that in light of the injuries sustained by plaintiff, including prolonged suffering and discomfort and his "inability to enjoy life as he once has," plus medical expenses and other damages, he was entitled to a verdict for those damages. Here, Plaintiff will be presenting unrefuted evidence about her injuries by lay witnesses and experts.

PLAINTIFF'S TRIAL BRIEF – 13

**F. The Trier Of Fact Acts As The Conscience Of The Community**

While this case is before a judge and not a jury, the following analysis applies to the trier of fact, regardless of whether it is a jury or a judge. Tort law has the function of positively changing behaviors—both of the specific tortfeasor defendant and of potential tortfeasors—in that there are certain values that society is not willing to compromise. Civil tort judgments establish standards, tolerance levels, and articulate valuable norms. Imposing liability warns the tortfeasor that if the behavior exhibited is not consistent with societal values, there will be appropriate legal sanctions. The norms generated in torts cases can have an impact by defining a baseline for tolerable conduct in the workplace and academic settings, complementing the regulatory enforcement mechanisms extant in the field.

In *Miller v. Kenny*, 180 Wash. App. 772, 325 P.3d 278 (2014), counsel began closing argument by explaining that a trial takes place in the location where key events happened because the local jury reflects the "conscience of the community" and serves as a protector and guardian for the community. The speech was not found to be a golden rule argument, which would otherwise be impermissible. To the contrary, the Court held that "Appeals for a jury to act as a conscience of the community are not impermissible." In *Miller*, counsel David Benninger of Seattle asked the jury to consider whether Defendant's conduct reflected "how we, as a community, want to be treated":

> [D]id they do things the right way to reflect how we, as a community, want to be treated? And if so, side with [the defendant]. Side with [the Defendant]. And then hope you don't have an accident with someone from [the Defendant]. Or the other [similar Defendants], who will all be seeing this, as we've heard, from the experts, they will all be publicizing this, and they will all be a race to the bottom then. But that's your decision. That's your values. That's what you get to decide, how we all are going to be treated equally, what that means.

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

*Miller*, 180 Wash. App. at 816. This argument in closing did not encourage the jury to inappropriately depart from neutrality by appealing to their self-interest, but rather appealed the jurors' interest as members of the public to "protect the public interest" and to enforce the public "compact" that defendant had to comply with their duties of reasonable care, good faith, and fair dealing. It was not improper argument.

In holding that the jury serves a role as guardians to protect the community, the *Miller* court was not inventing a novel concept. In *State v. O'Connell*, 83 Wn.2d 797 (1974), the Washington Supreme Court described the function of the jury as "exercising the conscience of the community." In that case, Justice Rosellini observed:

> Unlike the judge who has tried many cases and inevitably has acquired some settled attitudes, the jury is involved in a new experience quite different from that which its members encounter in everyday life. Admonished as they are with the solemnity of their duty, they can be expected to focus their attention upon the evidence with an interest and a curiosity that the experienced judge may find it difficult to consistently muster. **The jury represents the conscience of the community**, a role which a single judge may not be able to perform.

*O'Connell*, 83 Wn.2d at 778.

The Washington Supreme Court has itself frequently and approvingly referred to the trier of fact as the "conscience of the community." *E.g.*, *State v. Bartholomew*, 98 Wash.2d 173, 199 – 200, 654 P.2d 1170, 1185 (1982)(discussing the role of the jury as expressing "the conscience of the community on the ultimate question of life or death.")(citing *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770 (1968)). *State v. O'Connell*, 83 Wash.2d 797, 843, 523 P.2d 872, 899 (1974)("The jury, an admittedly representative and fair one, exercising the conscience of the community . . . ."). As the Court may know, the purpose of our court system is to invite and allow triers of fact to apply community standards. Indeed, authoritative treatises have been written on

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

this subject, emphasizing "our legal system has entrusted negligence questions to jurors, inviting them to apply community standards". *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 37, pp. 235 – 7 (5th ed.1984). There is a plethora of case authorities that espouse the same view. In *Jackson v. City of Seattle*, Division 1 of the Court of Appeals expressed the view that the purpose of tort law is to provide for community safety. "An underlying purpose of tort law is to provide for public safety through deterrence of negligent designers and builders." *Jackson v. City of Seattle*, 158 Wash.App. 647, 244 P.3d 425 (2010) (Quoting *Johnson v. Equip. Specialists, Inc*., 58 Ill.App.3d 133, 373 N.E.2d 837, 843, 15 Ill.Dec. 491 (1978)).

Washington courts have also permitted counsel to refer to the jury as the "conscience of the community" during closing arguments.

> Arguments by the State asking the jury to *act as "a conscience of the community"* are not improper unless intended to inflame the jury. The plea from the State that the jurors place their compassion with the victim and enforce the greater principle that it is "their right as citizens to believe that the death penalty is still the law of the land" were within permissible bounds and not prejudicial when considered in the context of the State's plea to the jury *to act as a conscience of the community*.

*State v. Davis*, 141 Wn.2d 798, 873 – 4, 10 P.3d 977 (2000) (emphasis added, internal citations omitted). In *State v. Finch*, 137 Wn.2d 792, 839 – 40, 975 P.2d 967 (1999), the Supreme Court approved the following "conscience of the community" closing argument to the jury:

> Ladies and gentleman, when *something happens in a civilized land, we want that something to be dealt with by the rule of law* and we need somebody to make the decision. *We can't call everybody in Snohomish County down to the courthouse to have a trial* for what happened here if, for no other reason, that there's no place big enough to put everybody and society would grind to a halt. So we bring in a representative sampling of the community to make the decision and *you are the representative sampling of that community*.
>
> We put on a trial and we tell you what the facts are or what the evidence is from which you may find the facts and the Judge tells you what the law is, and then you're told "Okay, now you've heard all the evidence and you've heard all the law.

PLAINTIFF'S TRIAL BRIEF – 16

Now go back there and you all figure this out." And that's going to happen here in just a couple of minutes.

In this way and following the law, as you have to do, *you are the conscience of the community; you are the voice of the law in the community*. We talked earlier. Raised the question during voir dire; I raised it during closing argument about how important it is that the verdict that you reach in this case should represent the truth, and it should. You all agreed with that. We are ultimately here about justice and your verdict should not only be a truthful verdict, but it should be a just verdict.

*State v. Finch*, 137 Wn.2d at 839 – 40 (emphasis in original). After approving the above argument because it did not seek to unfairly prejudice the jury, the Supreme Court stated the general rule:

Additionally, federal courts have found, as a general rule, that "appeals for the jury to act as a conscience of the community are not impermissible, unless specifically designed to inflame the jury." There is nothing in the Prosecutor's argument to indicate it was specifically designed to inflame the jury. Thus, we find that the statements made by the Prosecutor during rebuttal closing did not amount to prosecutorial misconduct.

*Id.* at 842 (internal citations omitted).

Considering the purpose and responsibility of the trier of fact, it is well established that the trier of fact is acting for the community as a whole and must consider the best interest of the community when making their decision.

It is legitimate and within the scope of proper argument to appeal to the jury to perform its duty in a case, and in this regard it has been recognized that a prosecutor's appeal to the jurors' civic responsibility as law-abiding citizens is proper unless counsel calculates to inflame their minds. It has been held proper for a prosecutor to make remarks indicating that the jury should stand up and be counted, and that the jury has to "be able to sleep" with their decision at night. It also has been held to be legitimate argument for a prosecutor to warn the jury of the necessity of doing its duty to keep the country from running red with blood, *to appeal to the jury to act as the conscience of the community, to determine and apply contemporary community standards*, and to argue that juries have a responsibility for suppressing crime.

Jacob A. Stein, CLOSING ARGUMENTS, §1:100, "Responsibility and duty of jury" (2013-14 ed.) (emphasis added).

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

Under the jury instructions in American Jurisprudence, Second Edition, "[a]n instruction that the jury is 'the moral conscience of our society' is not an improper appeal to community conscience, as it does not invite speculation regarding the sociological impact of an erroneous verdict, but reminds the jurors of their special role in the justice system." 75A Am.Jur. 2d Trial § 1222. In applying this principle, the Supreme Court in *Wheeler v. Hotel Stevens Co*. allows a similar jury instruction.

> The purpose of the oath administered to a juror is to bind his conscience to return an honest verdict according to his judgment. …the instruction, in effect, means that the jury should find the facts as they conscientiously believe them to have been established by the evidence. *Wheeler v. Hotel Stevens Co.,* 71 Wash. 142, 146 [127 P. 840, 842] (1912).

To allow a plaintiff to make "conscience of the community" arguments in closing is consistent with the very purpose of our modern tort system, which is to provide for public safety. *See Jackson v. City of Seattle*, 158 Wn. App. 647, 657, 244 P.3d 425 (2010) ("[a]n *underlying purpose* of *tort law* is to provide for public safety") (emphasis added). It flies in the face of reason to expect jurors to apply community standards and provide for public safety, but never allow the parties to discuss this important function openly.

**G. The Purpose Of Tort Law Is Deterrence**

Deterrence is a real and present virtue of Washington's civil justice system. The actual or potential imposition of civil tort liability changes the behavior of others. For defense counsel to deny the value of deterrent effect is to deny the historic role of the civil justice system as a primary and fundamental source of behavioral norms. It should not seem controversial to assert that the articulation of standards or norms has a positive influence on behavior and deters future misconduct. *See* William M. Landes & Richard A. Posner, The Economic Structure of Tort Law.

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

By articulating community norms, and refining them continuously, tort law functions with the hope of improving the human condition.

Washington's tort system is based upon both corrective retribution and deterring unreasonably dangerous conduct in the future. It is designed with the intent of having a powerful effect not only on the parties, but also on others involved in similar activities. Court efficiency is also derived from avoiding litigation and stimulating behavior that is less likely to cause harm. Judge Richard Posner recognized this effect: "If the benefits in accident avoidance exceed the cost of prevention, society is better off if those costs are incurred and the accident averted by adopting precautions in order to avoid a greater cost in tort judgments." Hundreds of thousands of Washington and common law tort cases have been decided over centuries for the purpose protecting society as a whole from physical harm to a person or property. If one denies the deterrent effect of tort law, presumably one also denies an essential purpose of Washington's civil justice system: the promotion of safety. It is unarguable that tort law promotes safety and protects personal and property rights by imposing a baseline duty of care. In *Ford v. Trendwest Resorts, Inc.*, the Supreme Court of Washington recognized:

> Tort actions are maintainable for a variety of reasons: to compensate injured parties; to determine parties' rights; to punish wrongdoers and *deter wrongful conduct; and to vindicate parties and deter retaliation. Restatement (Second) of Torts § 901*. The "measure of damages in tort [is] based upon the purposes for which actions of tort are maintainable."

*Ford v. Trendwest Resorts, Inc.*, 146 Wash.2d 146, 154 (2002)(quoting *Restatement (Second) of Torts § 901*)(emphasis added). Likewise, in *Barr v. Interbay Citizens Bank of Tampa, Fla.*, the Supreme Court of Washington held that "compensatory damages . . . were sufficient to punish the defendant, and will serve as a warning and as an example *to deter others from committing similar*

PLAINTIFF'S TRIAL BRIEF – 19

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

*offenses in the future.*" *Barr v. Interbay Citizens Bank of Tampa, Fla*., 96 Wash.2d 692, 701 (1981)(emphasis added). The Court also noted "[t]o some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person."[1]

According to the Fifth Edition of Prosser and Keeton on Torts, "the law of torts is concerned not solely with individually questionable conduct but as well with acts which are unreasonable, or socially harmful, from the point of view of the community as a whole."

For families suffering the wrongful death of a loved one and victims of defective products or negligent acts—suffering brain injury, loss of a limb, the ability to reason, or the capacity to love and be loved—litigation is about more than money. It is about more than vengeance or retribution. It is about the promise of the civil justice system. Civil justice for plaintiffs derives from the fairness of the process, the right to have one's story told, meaningful remedy, and one additional factor: plaintiffs ask the legal system to take steps to prevent repetition of their tragedy. This carries extreme significance for many tort victims. Prevention of future harm is a powerful public expectation and basic motivation for those injured by wrongful acts or dangerous behavior.

Families and victims do not want their tragedy to be a loss in vain, a hope expressed by some courts as well. Individuals and entities brought to justice establish models for future actions producing positive incentives that lessen the probability that others will suffer the same harm they experienced. When school athletic programs fail to protect a student or an infant's breathing

---

[1] *See also Bird-Johnson Corp. v. Dana Corp.*, 119 Wash. 2d 423 (1992) (citing *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981)) ("it is sound policy to deter all wrongdoers"); *Babcock v. State By & Through Dep't of Soc. & Health Servs.*, 112 Wash. 2d 83, 113, 768 P.2d 481, 497 (1989), (Utter, J. dissenting) ("The law of torts serves two basic functions: it seeks to prevent future harm through the deterring effect of potential liability and it provides a remedy for damages suffered."); In *Jackson v. City of Seattle,* 158 Wash. App. 647 (2010), the Court recognized that the "underlying purpose of tort law is to provide for public safety through deterrence."

PLAINTIFF'S TRIAL BRIEF – 20

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

monitor fails, i.e., when avoidable disaster strikes, we look to the legal system for recognition of harm--and for the hope that future losses can be avoided.[2] It is about fault and responsibility, obligation and foresight, carried out with the hope that civil justice produces a result that acknowledges plaintiff's losses and limits the possibility of a repetition of plaintiff's tragedy. In short, it is about deterrence.

Respectfully submitted this 29th day of September, 2020.

**WASHINGTON INJURY LAWYERS, PLLC,**

*/s/Young-Ji Ham*
*/s/Jenna M. Labourr*
Young-Ji Ham, WSBA #46421
Jenna M. Labourr, WSBA #44555
*Attorneys for the Plaintiff*

---

[2] *See Smith v. Wade*, 461 U.S. 30, 50 (1983) ("[M]ost officials are guided primarily by the underlying standards of federal substantive law--both out of devotion to duty, and in the interest of avoiding liability for compensatory damages.... [T]he conscientious officer who desires clear guidance on how to do his job and avoid lawsuits can and should look to the standard for actionability in the first instance.").

PLAINTIFF'S TRIAL BRIEF – 21

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208

# CERTIFICATE OF SERVICE

I hereby declare under the penalty of perjury under the laws of the State of Washington and the United States of America that I have served a true and correct copy, except where noted, of the foregoing **PLAINTIFF'S TRIAL BRIEF** upon the individual(s) listed by the following means:

| | |
|---|---|
| **Counsel for Defendants:**<br>Thomas J. Collins, WSBA # 2157<br>Christopher Campbell, WSBA # 44636<br>**MERRICK, HOFSTEDT & LINDSEY, P.S.**<br>3101 Western Avenue, Suite 200<br>Seattle, WA 98121<br>Phone: (206) 682-0610<br>E-mail: tcollins@mhlseattle.com; ccampbell@mhlseattle.com; | [X] Via ECF |
| **Counsel for Defendants:**<br>Shawn Toliver, CABA # 148349<br>**LEWIS BRISBOIS BISGAARD & SMITH, LLP**<br>2185 N. California Boulevard, Suite 300<br>Walnut Creek, CA 94596<br>Phone: (925) 357-3456<br>E-mail: Shawn.Toliver@lewisbrisbois.com;<br>Connie.Costanza@lewisbrisbois.com; | [X] Via ECF |
| **Counsel for Defendants:**<br>Heather Jensen, WSBA # 29635<br>**LEWIS BRISBOIS BISGAARD & SMITH, LLP**<br>1111 Third Avenue, Suite 2700<br>Seattle, WA 98101<br>Phone: (206) 436-2020<br>E-mail: Heather.Jensen@lewisbrisbois.com;<br>Logan.Platvoet@lewisbrisbois.com; | [X] Via ECF |

Executed on the 29th of September, 2020, in Shoreline, Washington, in accordance with 28 USC 1746.

**WASHINGTON INJURY LAWYERS, PLLC,**

*/s/ Young-Ji Ham*
Young-Ji Ham, WSBA # 46421

PLAINTIFF'S TRIAL BRIEF – 22

**WASHINGTON INJURY LAWYERS, PLLC**
1700 7TH AVE, SUITE 2100
SEATTLE, WA 98101
P: (425) 312-3057 | F: (206) 866-0208