UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLISON N. RANDAL, an individual,

     Plaintiff,

v.

XPO LOGISTICS, INC, a Delaware
corporation conducting business in the
State of Washington; MICHAEL D.
MICHELENA, an individual employed by
XPO LOGISTICS, INC.; J. DOE
CORPORATIONS AND/OR ENTITIES 1-
5; and J. DOE 1-5, individuals,

     Defendants.

NO. 3:18-cv-6002 BHS

**DEFENDANTS XPO LOGISTICS
AND MICHAEL MICHELENA'S
TRIAL BRIEF**



LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

<u>**TABLE OF CONTENTS**</u>

I.    STATEMENT OF RELEVANT FACTS ................................................................. 1

    A.  Motor Vehicle Accident ................................................................. 1

    B.  Plaintiff's Injuries and Treatment ................................................ 2

II.   STATEMENT OF ISSUES ......................................................................... 3

III.  LEGAL ARGUMENTS .............................................................................. 4

    A.  Plaintiff's Claimed Non-Economic Damages are not Recoverable. ...................... 4

       1.  Plaintiff's Past Medical Expenses will not be Documented as Exhibits at Trial and Are Not of Reasonable Value. ..................................... 4

       2.  Plaintiff Cannot Prevail on Her Claim for Future Medical Treatment. ........... 4

       3.  Plaintiff's Expert's Life Care Plan Items are Unnecessary and the Costs of Those Items are Inflated and/or Inapplicable. ................................. 5

       4.  Plaintiff's Claimed Damages for Pain and Suffering are Unsupported. ........... 9

    B.  Plaintiff's Alleged Economic Damages are also not Recoverable. ...................... 9

       1.  Plaintiff's Alleged Past Wage Loss and Future Loss of Earning Capacity Claims are Unsupported. ........................................................ 9

    C.  Plaintiff's Intended Improper Lay Witness Testimony. ............................... 11

    D.  Plaintiff's Intended Improper Expert Witnesses. .................................... 13

       1.  Michael Brage, M.D. has Admitted that he is Not an Expert and Further, His Testimony is Not Relevant and Reliable. ........................................ 13

       2.  The Testimony of Dr. Schuster, John Cary and William Brandt Is Not Reliable. ........... 17

       3.  Dr. Schuster is not a Qualified Expert in this Case and his Testimony is Also Cumulative. 18

IV.  DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED TRIAL EXHIBITS ........ 19

V.   DEFENDANTS' EXHIBITS ...................................................................... 21

VI.  DEFENDANTS' EXPERT AND LAY WITNESSES ......................................... 21

VII.  CONCLUSION ................................................................................... 21



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

**TABLE OF AUTHORITIES**

**Cases**

*Aetna Cas. & Sur. Co. v. Guynes* (5th Cir. 1983) 713 F.2d. 1187 .................................................... 13

*Cooper v. Brown* (9th Cir. 2007) 510 F.3d 870 ......................................................................... 14

*Daubert v. Merrell Dow Pharm., Inc.* (9th Cir. 1995) 43 F.3d 1311 ......................................... 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579 ............................... 14, 15, 18

*Harris v. Robert C. Groth, M.D., .S.* (1983) 99 Wn.2d 438.......................................................... 15

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. C-07-5944, 2017 WL 10434367 .. 17

*Lynch v. City of Boston* (1st Cir. 1999) 180 F.3d. 1 .................................................................. 12

*McLaughlin v. Cooke* (1989) 112 Wn.2d 829 ........................................................................... 15

*McLaughlin v. Cooke*, 112 Wn.2d 829.......................................................................................... 4

*O'Donohue v. Riggs* (1968) 73 Wn.2d 814,.............................................................................. 15

*United States v. Hicks* (9th Cir. 1996) 103 F3d 837 ................................................................ 13

*United States v. Williams* (7th Cir. 1996) 81 F3d 1434 .......................................................... 13

*Unrein v. Timesavers, Inc.* (8th Cir. 2005) 394 F.3d 1008 ..................................................... 14

*Whittenberg v. Live Nation Worldwide, et al.*, Superior Court of Washington in and for King
    County, No.16-2-29490-1 KNT .......................................................................................... 18

**Rules**

Fed. R. Evid. Rule 401 ............................................................................................................. 12

Fed. R. Evid. Rule 402 ................................................................................................. 12, 20, 21

Fed. R. Evid. Rule 403 ......................................................................................... 12, 13, 19, 20, 21

Fed. R. Evid. Rule 602 ..................................................................................................... 13, 20

Fed. R. Evid. Rule 701 ............................................................................................................. 12

Fed. R. Evid. Rule 703 ............................................................................................................. 20

Fed. R. Evid. Rule 802 ............................................................................................................. 20

Fed. R. Evid. Rule 1006 ........................................................................................................... 20

LCR 11(c) .................................................................................................................................. 4

LCR 16 ............................................................................................................................... 19, 20

LCR 16(m)(1) ............................................................................................................................. 4

LCR 43(j) ............................................................................................................................ 8, 19



TABLE OF AUTHORITIES -ii-
3:18-cv-6002 BHS

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1    Defendants XPO Logistics, Inc. and Michael D. Michelena (collectively "Defendants"),

2  submit the following Trial Brief in advance of trial of this matter to the Court on October 20, 2020.

3  **I.    STATEMENT OF RELEVANT FACTS**

4       **A.    Motor Vehicle Accident**

5       This action arose out of a motor vehicle accident which occurred on December 23, 2015, at

6  approximately 10:25 a.m. in Lewis County, Washington.  At the time of the accident Plaintiff

7  Allison Randal ("Plaintiff"), a 41-year-old woman, and her 16-year-old son, Martin ("Max") Randal,

8  were traveling in a 1998 Ford Explorer southbound on I-5 toward Vancouver, Washington.

9       Defendant Michael Michelena ("Michelena") was also driving southbound on I-5 at the

10  time, and was operating a 2007 International semi-truck on behalf of XPO Logistics ("XPO"), and

11  was pulling a container trailer.  Ray Naegeli ("Naegeli"), an employee of Tillamook County

12  Creamery Association ("Tillamook"), was operating a semi-truck, also traveling southbound on I-

13  5 at the time of the subject accident.

14       Michelena was traveling two vehicles behind Plaintiff's vehicle.  Naegeli was traveling

15  between Plaintiff's vehicle and Michelena's truck at the time of the subject accident.

16       Moments before the subject accident, traffic began to slow in front of Plaintiff, and

17  Plaintiff began to slow her vehicle.  Michelena, also in response to the slowed traffic, attempted to

18  slow his truck but was unable to stop prior to impact.  Michelena struck the Tillamook semi-truck

19  in front of him, which pushed the Tillamook truck into the rear of Plaintiff's vehicle.  The impact

20  caused Plaintiff's vehicle to be pushed forward, striking the back of the semi-trailer stopped in

21  front of her.  As a result of the subject accident, Plaintiff sustained a fracture of her left heel.

22  Plaintiff was the only person involved in the accident whose injuries required hospitalization.

23       On December 7, 2018, Plaintiff filed her complaint against Defendants XPO, Michelena,

24  Tillamook, and Naegeli in the U.S. District Court for the Western District of Washington at

25  Tacoma, Case No. 3:18-cv-6002 BHS, based on diversity jurisdiction of the parties.  Both Naegeli

26  and Tillamook have since been dismissed.

27       Plaintiff's complaint alleges a cause of action against Michelena for negligence and a

28  subsumed cause of action against XPO for negligent hiring, training, entrustment, supervision and


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TRIAL BRIEF- 1
3:18-cv-6002 BHS

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1   retention of Michelena.

2       **B.**    **Plaintiff's Injuries and Treatment**

3       Plaintiff was taken from the accident scene to Providence Centralia Hospital's Emergency

4   Room and received diagnostic testing which demonstrated a displaced and angulated fracture of

5   the mid to anterior portion of the calcaneus (heel bone) extending from the subtalar joint to the

6   inferior cortex of the mid calcaneus. That same day, Plaintiff was taken to the University of

7   Washington's Harborview Medical Center ("Harborview") and received diagnostic imaging,

8   including a CT of her left ankle, and x-rays of her right tibia/fibula, foot, calcaneus, and knee,

9   which revealed no other injuries.

10      On December 24, 2015, Plaintiff had surgery during which screws were installed to

11   stabilize her left heel and an external fixator was installed to her left lower extremity. Plaintiff

12   underwent a second surgery at Harborview on January 4, 2016, which was performed by Dr.

13   Michael Brage. During the second surgery, the external fixator was removed and she received an

14   open reduction and internal fixation of her left calcaneus. By April 13, 2016, Plaintiff was

15   determined to be well-healed with no complications by a doctor at Tufts Medical Center in

16   Boston. (Plaintiff was residing in Boston at the time of the accident.)

17      On September 6, 2016, Dr. Brage performed a third procedure to remove the hardware

18   from Plaintiff's heel because of pain she was experiencing from the screws. On January 26, 2017,

19   Plaintiff was examined by Dr. Peter Dewire from Tufts University; he noted that her incisions

20   were well healed from the third procedure and he recommended she continue physical therapy.

21      Plaintiff continued her physical therapy in 2017 until, on September 19, 2017, Dr. Dewire

22   determined that she had reached maximal medical improvement.

23      Subsequently, in a report dated October 30, 2017, addressed to Plaintiff's counsel, Dr.

24   Dewire stated that Plaintiff reached her maximum medical improvement and that she *may* require

25   additional treatment in the future including physical therapy, pain medication, and possible

26   surgery. Further. Dr. Dewire opined that *if* Plaintiff developed *symptomatic* arthritis in the

27   subtalar joint, then she would need a subtalar arthrodesis (fusion) surgery and she might also

28   benefit from Achilles lengthening surgery or capsular release of the ankle joint to address her loss


**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

TRIAL BRIEF- 2
3:18-cv-6002 BHS

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1  of ankle motion.  (Dr. Dewire did *not* opine that Plaintiff may also need an ankle fusion or total

2  ankle replacement surgery in the future.)

3      Further, Dr. Dewire *did* opine that Plaintiff should be able to continue to work full time

4  without restriction in her current occupation as being a key note speaker.  Dr. Dewire stated that

5  this injury should not affect her earning capacity.

6      In 2018, Plaintiff moved to the United Kingdom to begin a PhD program at Cambridge.

7      In April 2019 Plaintiff had moved to Hopewell Junction, in upstate New York.  She began

8  teaching at Vassar College.

9      In October 2019, Plaintiff underwent an EMG study at Orthopedic Associates of Dutchess

10  County which showed no evidence of left tarsal tunnel syndrome or peripheral neuropathy.

11     On June 29, 2020, a CT scan was performed on Plaintiff's left ankle which revealed mild

12  posttraumatic subtalar osteoarthritis.

13     Nothing in any of Plaintiff's medical records, including the ones produced from as recently

14  as July 2020, indicate that Plaintiff has *any* arthritis in her ankle.  Further, her subtalar joint only

15  shows mild arthritis currently, which is so mild that Dr. Brage has *not* recommended subtalar

16  fusion surgery to address it.

17  **II.    STATEMENT OF ISSUES**

18     Defendants XPO and Michelena have admitted liability for the subject accident.

19     There is a dispute over the nature and extent of Plaintiff's claimed injuries and damages as

20  a result of the subject motor vehicle accident.

21     The following are the issues in the case:

22     A.    Is the future medical treatment proposed for Plaintiff's left heel injury a medical
23           necessity?

24     B.    What is the amount of reasonable non-economic damages to which Plaintiff is
           entitled, if any?

25     C.    Which is the extent of Plaintiff's past lost wage claim and whether Plaintiff will
26           lose any future income because of this injury?

27     D.    What is the extent of Plaintiff's lost earning capacity because of this injury, if any?

28



TRIAL BRIEF- 3
3:18-cv-6002 BHS

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

# III. LEGAL ARGUMENTS

## A. Plaintiff's Claimed Non-Economic Damages are not Recoverable.

### 1. *Plaintiff's Past Medical Expenses will not be Documented as Exhibits at Trial and Are Not of Reasonable Value.*

In August 2020, Plaintiff served her Third Amended Statement of Damages which states her past medical expenses total $132,978.56. However, Plaintiff has failed to disclose in her Pretrial Statement or in the [Proposed] Pretrial Order in this matter any exhibits regarding the medical billings she has allegedly incurred which relate to the subject injury. She has also not disclosed any witnesses who will be called at trial to authenticate any medical billings. (Attached to the Declaration of Shawn A. Toliver ("Toliver Dec"), as Exhibits "A" and "B," respectively, are Plaintiff's Pretrial Statement served on August 28, 2020 and the Parties [Proposed] Pretrial Order filed September 28, 2020.) Therefore, pursuant to the provisions of LCR 16(m)(1) and LCR 11(c), Plaintiff should be determined to have abandoned this portion of her claimed damages and therefore should be barred from introducing any evidence regarding her alleged past medical expenses at trial.

### 2. *Plaintiff Cannot Prevail on Her Claim for Future Medical Treatment.*

Plaintiff intends to introduce evidence at trial that she will need three additional surgeries as a result of her left heel injury. Those surgeries are:

- A subtalar joint fusion;

- An Achilles lengthening surgery (to be performed at the same time as the subtalar joint fusion); and

- An ankle joint fusion or a total ankle replacement.

Plaintiff seeks an award from this Court for the cost of all three surgeries. However, any medical testimony provided must be based on a reasonable degree of medical certainty according to the facts of the case, as opposed to unsupported speculation. *McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989).

Defendants contend that Plaintiff's alleged need for these three future surgeries has not been determined by a retained and properly disclosed expert, to the proper legal standard. Rather,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

Plaintiff's contentions regarding her potential future medical treatment are based on the speculation ("ideas") of her treating foot and ankle surgeon, Dr. Brage, regarding what "may" happen in the future regarding her heel injury. Defendants expect that Dr. Brage will confirm during his trial testimony, [as Dr. Brage admitted in both of his Narrative Reports (dated October 2019 and March 2020)], that he is **not** an expert witness and he is "simply a treating physician that is providing a summary of my care. I can also provide some *ideas* regarding future medical treatment." (Emphasis added.)

Given Dr. Brage's statements, Defendants objected in their *motion in limine*, which has been reserved by the Court for trial, to any testimony proffered by Dr. Brage at trial regarding Plaintiff's potential future medical treatment because he has stated that he is not an expert witness, he is just a treating physician.

Plaintiff's have also disclosed Dr. Gary Schuster to testify regarding Plaintiff's future medical treatment. However, Dr. Schuster is not a foot and ankle surgeon and therefore he is not qualified to testify regarding Plaintiff's potential need for any future surgeries.

Plaintiff's current medical records do not indicate that she has *any* arthritis in her ankle joint at present and in fact, she only has mild arthritis in her subtalar joint. Dr. Brage has <u>not</u> recommended a subtalar fusion, even given the mild arthritis in her subtalar joint. Therefore, it is not a reasonable medical certainty, that Plaintiff needs even a subtalar fusion performed now, and it is patently not reasonable to assume that she will need either an ankle fusion or a total ankle replacement in the future. Plaintiff's claim that she will need an ankle surgery in the future is pure speculation, and therefore the cost for such surgery is not recoverable as damages.

> 3. *Plaintiff's Expert's Life Care Plan Items are Unnecessary and the Costs of Those Items are Inflated and/or Inapplicable*.

Plaintiff has retained John Cary ("Cary") to opine as to Plaintiff's future life care plan ("LCP") allegedly required as a result of her injuries arising from the subject accident. Cary has produced no less than three LCPs for Plaintiff, dated October 7, 2019; December 13, 2019 and July 31, 2020.

Defendants anticipate that Cary will testify at trial regarding the items which are contained

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1   in the July 31, 2020 report, which include costs for the three additional surgeries which Plaintiff

2   claims she will need in the future.  (As stated above, Defendants dispute this contention but

3   address these costs in the event the Court is inclined to award Plaintiff any amount for these

4   surgeries.)

5         In his initial report dated October 7, 2019, Cary indicated that the subtalar joint fusion and

6   Achilles lengthening surgeries (to be performed at the same time), would cost a minimum of

7   $5,392.30 for the surgeon's fees, $2,400 for the anesthesiologist's fees and $52,981.00 for the

8   facility fees, for total of $60,773.30 for those two surgeries.

9         In a supplemental report dated December 13, 2019, Cary changed his figures for the

10  facility fees for these combined surgeries dramatically, without explanation.  He estimated that the

11  combined subtalar fusion/Achilles lengthening surgeries would cost from $56,033.60 on the low

12  end, to $123,946.86 if there were complications.  (The surgeon and anesthesiologist's fees

13  remained the same.)

14        Nothing in Plaintiff's medical records indicates that she is a high-risk patient.  She already

15  has had three surgeries on her heel and was released expeditiously from the hospital each time,

16  without complications.  Defendants will cross-examine Cary at trial about the basis for his

17  exorbitant increase in the estimated costs of the facility fees for these combined surgeries, but it

18  appears that the only reason for doing so was to drive up the total cost of the life care plan.

19        Similarly, Cary initially indicated in his LCP dated October 7, 2019 that Plaintiff was "at

20  risk" for needing either an ankle fusion (at a cost of $67,257) or a total ankle replacement (at a

21  cost of $153,413), if the other course of treatments stated in the LCP were not successful.  In his

22  December 2019 report, Cary changed his categorization for those two surgeries from "at risk" to

23  that either one of them would be required a minimum of one time.

24        Defendants have not been provided with any reports or medical records indicating that Dr.

25  Brage (or any other foot and ankle surgeon), examined Plaintiff between October 7, 2019 and

26  December 13, 2019 and changed his "idea" that Plaintiff "may" require ankle surgery at some

27  point, perhaps decades into the future, to a certainty that she will.

28        Defendants also anticipate that Mr. Cary will testify at trial regarding the other items which

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

are included in his July 31, 2020 LCP. Those additional items are:

- Primary Care Physician evaluation monitoring and treatment (Over and above pre-injury needs), 1-2x per year for life;

- Podiatry evaluation monitoring and treatment, 1x per year for life;

- Intra-articular injections, maximum 3 per year for approximately 3 years;

- Foot and ankle orthopedic surgeon evaluation, monitoring and treatment, 1x year for approximately 20 years;

- Subtalar fusion & Achilles lengthening surgery, 1x;

- Ankle fusion or total ankle replacement surgery, 1x;

- Parking accessibility placard, 1x;

- Physical therapy evaluation, monitoring and treatment, annual evaluation, 12-18 visits annually for life, plus 36 additional visits after each probable surgery (total 2 evaluations and 72 visits, within next 10 years);

- Individual counseling evaluation, minimum 1x evaluation, the number of sessions to be determined by evaluation;

- CT scans, 3x from current age to life;

- X-rays, every 1-2 years for life;

- Shower bench/chair, replace every 3-5 years for life;

- Hand held shower, replace every 7-10 years for life;

- Grab bars, replace every 7-10 years for life;

- CAM boot, minimum 2-3 from current age to 10-20 years;

- Custom Richie Brace, 1-2 total for life;

- Knee scooter, minimum 1x from now to 10-20 years);

- Orthotic inserts, 1x year every 1-2 years for life);

- Ergonomic evaluation, 1x;

- Adjustable work station, min. 2 total;

- Case management, 12 hours per year for life;

- Post-operative Home Health Aide, 2-4 hrs/day for 6 months;

- Household assistance (approx. 4-6 hrs/month for life;

- Yard/home maintenance and snow removal, 4-6 hrs/month for life;

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

- Individualized exercise program, 1x joining fee, then monthly fee from current age for life; and

- Gabapentin, 2x day for life.

Plaintiff's forensic economist, William Brandt ("Brandt"), estimates that the net present value of Cary's July 31, 2020 LCP is between $707,376 to $1,029,378.

Other than the surgeries which Dr. Brage suggested Plaintiff may need in the future, the only items Dr. Brage stated Plaintiff will likely need are non-steroidal anti-inflammatories, intra-articular injections and bracing. None of the other items contained Cary's LCP are called for by Dr. Brage. These additional items are clearly unnecessary and/or excessive both in frequency and duration.

Additionally, Dr. Brage has not stated in either of his reports that Plaintiff will be so disabled after recovering from the subtalar fusion surgery, should she have it, such that she would not, for example, be able to perform her own housekeeping and lawn care services from now until the end of her life. (Those are the two highest-cost items contained in Mr. Cary's LCP.)

Defendants expect that Plaintiff's other medical expert, Dr. Schuster, will attempt to testify regarding Plaintiff's alleged need for the additional items contained in Mr. Cary's LCP. Defendants assert that by disclosing two medical experts to testify regarding the same matters, Plaintiff has violated LCR 43(j) and has requested that the Court require Plaintiff to choose either Dr. Brage or Dr. Schuster as the medical expert who will testify on her behalf at trial. If Plaintiff chooses Dr. Schuster as her medical expert, he is not competent to testify regarding Plaintiff's future medical needs regarding her heel injury, as he is not an orthopedic surgeon, he is an internist. According to Fed. R. Evid. 702 an expert can only testify within the scope of his/her expertise. Thus, Dr. Schuster should be precluded from attempting to offer any opinions regarding Cary's LCP.

Additionally, the costs used in Cary's LCP are inapplicable, as he has used Seattle-area costs, when Plaintiff lives in upstate New York. Therefore, Cary's expected testimony regarding Plaintiff's LCP cannot be relied on by the Court as the basis for any potential award in Plaintiff's favor in this case.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TRIAL BRIEF- 8
3:18-cv-6002 BHS

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

Plaintiff is simply attempting to improperly inflate her damages in this case by including items in the life care plan which are neither medically necessary nor reasonable, or are for an inappropriate duration or frequency, and are not priced at the cost for such services where Plaintiff actually resides.

4. <u>Plaintiff's Claimed Damages for Pain and Suffering are Unsupported.</u>

Plaintiff's Third Amended Statement of Damages served in August 2020, contains the following statement: "general damages of up to $10,000,000 would not be unreasonable, should a jury (sic) so award." (This matter is set before this Court for a bench trial, not a jury trial.) Such an award would be absolutely improper in this case. While Defendants admit that Plaintiff was injured in the subject accident, there was no intentional conduct involved. It was simply an accident in which Plaintiff was unfortunately injured.

Plaintiff's heel injury has some non-economic value, as she did sustain an injury in the subject accident, but Dr. Brage, her treating provider, has not reported that Plaintiff's injury is debilitating nor has it prevented Plaintiff from remaining continuously employed, other than when she chose to pursue her PhD program in the United Kingdom at Cambridge.

Thus, Plaintiff's claim for general damages of up to $10,000,000 has no rational relationship to the reasonable value of Plaintiff's damages and therefore should not be considered by this Court.

**B.** **<u>Plaintiff's Alleged Economic Damages are also not Recoverable.</u>**

*1.* *<u>Plaintiff's Alleged Past Wage Loss and Future Loss of Earning Capacity Claims are Unsupported.</u>*

Plaintiff is a computer science and software engineer. Prior to the Covid-19 pandemic, part of her work entailed traveling to give seminars regarding "open source" software issues, which is Plaintiff's specific field. To Defendants' understanding, Plaintiff has worked continuously since the time of the accident except for a time in 2018 when she moved to the United Kingdom to start a PhD program at Cambridge.

Defendants anticipate that Cary will testify at trial, as he has stated in all of his reports: 1) that Plaintiff's pre-injury earning capacity is $291,502 per year; 2) that Plaintiff possesses skills

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1   commensurate with earnings in the upper 90% percentile for Computer Scientists and Software

2   Developers; and 3) that he estimates that Plaintiff's post-injury loss of earning capacity to be

3   between 0% (no loss) to 10% of her potential earning capacity over her lifetime due to this injury.

4          There is absolutely no basis for Cary's anticipated opinions and no documentation has

5   been produced to support them.  First, there is no documentation to support Cary's determination

6   that $291,502 per year was Plaintiff's pre-injury annual earning capacity.  It appears that this

7   number was selected simply because it was the highest income amount he was provided by

8   Plaintiff.

9          Also, there is no information provided regarding what source Cary used and the criteria he

10  applied to arrive at his opinion that Plaintiff is in the 90% percentile of earnings for computer

11  scientists and developers.

12         Finally, there is no basis whatsoever for Cary's conclusion that Plaintiff will lose 5-10% of

13  her earning capacity over her lifetime as a result of her injury.  He stated in his July 31, 2020

14  report, and Defendants anticipate that he will testify at trial that: "It is more probable than not that

15  Ms. Randal will continue to miss out on opportunities related to her decreased functional

16  capabilities and increased and unpredictable symptomology and resulting impaired travel ability."

17  This is pure speculation on Cary's part.  Further, it appears that the only individual with whom

18  Cary discussed Plaintiff's functional capabilities and their effect on Plaintiff's potential future

19  income opportunities is the *Plaintiff*.   The Plaintiff is obviously not a proper, objective source on

20  whom Cary can base any of  his opinions.

21         Further, Plaintiff has failed to disclose any trial exhibits which would support any of

22  Cary's opinions, which allegedly provide the basis for Plaintiff's economic damage claims.  As

23  Cary's opinions are based solely on his own speculation, they are not reliable and cannot be

24  considered by the Court.  And since no documents will be introduced at trial to support Plaintiff's

25  economic damage claims, Plaintiff has no evidence to support any such claims and, accordingly,

26  the Court cannot award her any amount for economic damages.

27         The lack of any evidence to support any economic damages is supported by Plaintiff's own

28  sworn testimony in this case.  In deposition on June 27, 2019, Plaintiff's counsel represented on


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the record that "…she's not making any sort of lost wage or lost earning capacity claim, so I would say none of this (line of questioning) is relevant."  (Deposition of Allison Randal, ("Randal Dep."), page 114:13-15; attached to the Toliver Dec. as Exhibit "C" is a true and correct copy of the relevant pages of Ms. Randal's deposition.)

Also in her deposition, Plaintiff testified *under oath* that she is *not* making any claim for lost wages or any claim for loss of future earning capacity in this case.  (Randal Dep., Exhibit "C" to the Toliver Dec., page 114:19-24.)

19 **Q: You're not making any claim for lost wages in this**

20 **case?**

21 A: I am not.

22 **Q: You're not making any claim for loss future**

23 **earning capacity in this case?**

24 A: I am not, no.

Given that testimony, Plaintiff was not questioned in deposition about these issues.  For Plaintiff to now assert such losses, Plaintiff impeaches her own deposition testimony to the contrary, and effectively ambushes the defense, given her admissions in deposition.

Significantly, Dr. Dewire, the only one of Plaintiff's foot and ankle surgeons who has commented on the effect of her injury on her future earning capacity, opined that:

"She should, however, be able to continue to work full time without restriction in her current occupation as being a key note speaker.  This injury, therefore, should not affect her earning capacity."

Thus, based on Plaintiff's own sworn admission of no claim for lost wages or earning capacity, the representation of her attorney in said deposition, and the only medical expert to opine on the topic, leads to the only reasonable conclusion:  Plaintiff has no wage loss or loss of earning capacity claims.

## C.    Plaintiff's Intended Improper Lay Witness Testimony.

According to Plaintiff's Pretrial Statement, Plaintiff intends to call the following lay witnesses at trial: 1) Michelena (via video deposition testimony) to discuss the subject accident

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

and the surrounding circumstances; 2) Martin "Max" Randal (Plaintiff's son) to testify regarding the subject accident, Plaintiff's physical and emotional condition before the subject accident, Plaintiff's injuries and damages, and how the injuries and damages continue to affect her life and their relationship; 3) Jeffrey Martin (Plaintiff's brother) to testify regarding Plaintiff's physical and emotional condition before the subject accident, Plaintiff's injuries and damages, and how the injuries and damages continue to affect her life; 4) Stefano Rivera (Plaintiff's ex-boyfriend) to testify regarding Plaintiff's physical and emotional condition before the subject accident, Plaintiff's injuries and damages, how their relationship was affected by the accident, how Plaintiff's injuries and damages affected her professional career, and how the injuries and damages continue to affect her life; and 6) Matthew Treinish to testify regarding his knowledge of Plaintiff's injuries and damages and how the injuries and damages affect her life. (Exhibit "A" to the Toliver Dec.)

Irrelevant evidence is not admissible. Fed. R. Evid. Rule 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. Fed. R. Evid. Rule 401. However, even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. Rule 403.

For lay opinion testimony to be admissible, the witness must provide an opinion that is helpful to the trier of fact in understanding the testimony or in determining a fact in issue. Fed. R. Evid. Rule 701. Lay opinions are found not to be helpful when the trier of fact can readily draw the inferences and conclusions from the facts presented without the aid of the opinion. *Lynch v. City of Boston* (1st Cir. 1999) 180 F.3d. 1, 17. Here, the Court will be able to determine what Plaintiff's injuries and damages are from Plaintiff's testimony and that of her treating physician, Dr. Brage, the Court does not need four additional witnesses to testify regarding those matters. Further, Plaintiff will testify regarding how the injuries and damages have affected her life and her relationships and she is the proper witness to do so as she has personal knowledge of those topics. The attempt to call four additional lay witnesses on those topics is improper as it is speculative.

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The Court has discretion to exclude evidence that is cumulative (or repetitive) of evidence already in the record. *United States v. Hicks* (9th Cir. 1996) 103 F3d 837, 847. Evidence is cumulative when it adds very little to the probative force of the other evidence, in which case, the probative value is substantially outweighed by the time it takes to present it. *United States v. Williams* (7th Cir. 1996) 81 F3d 1434, 1443. Courts have the specific power to limit the number of witnesses if they are testifying to the same point. *Aetna Cas. & Sur. Co. v. Guynes* (5th Cir. 1983) 713 F.2d. 1187, 1193.

Further, Fed. R. Evid. Rule 602 states that a witness may testify to a matter only if the witness has personal knowledge of that matter. Therefore, it is also appropriate for the Court to exclude Plaintiff's lay witnesses from testifying based on a lack of personal knowledge of the stated topics.

Additionally, there is no need to call Michelena and/or Martin "Max" Randal to testify regarding the subject motor vehicle accident and the surrounding circumstances as liability for the collision has been conceded by Defendants and therefore that issue is not before the Court. If Plaintiff is allowed to play Michelena's video deposition at trial, and/or call Max Randal to testify, it will only cause undue delay in completing the trial and will waste the Court's valuable time in hearing witnesses testify about an accident for which liability has already been conceded. Thus, the Court should preclude Plaintiff from introducing Michelena's deposition video and/or from calling Max Randal at trial, pursuant to Fed. R. Evid. Rule 403.

Further, the probative value of any testimony by Michael Michelena, Martin "Max" Randal, Jeffrey Martin, Stefano Rivera and Matthew Treinish is outweighed by the danger of unfair prejudice to Defendants, a further basis for excluding it pursuant to Fed. R. Evid. Rule 403. This proposed testimony will add nothing to Plaintiff's testimony and will simply be used to attempt to elicit sympathy for Plaintiff from the Court.

For the foregoing reasons, Plaintiff should be precluded from calling any lay witnesses at trial, other than Plaintiff and her treating physician Dr. Brage.

**D.    Plaintiff's Intended Improper Expert Witnesses.**

*1.    Michael Brage, M.D. has Admitted that he is Not an Expert and Further,*


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

<u>*His Testimony is Not Relevant and Reliable.*</u>

Plaintiff intends to call Dr. Brage as both a lay and expert witness to testify to Plaintiff's damages, treatment, future treatment, and prognosis.

Fed. R. Evid. Rule 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

    a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b) the testimony is based on sufficient facts or data;

    c) the testimony is the product of reliable principles and methods; and

    d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*. (1993) 509 U.S. 579, the Supreme Court put trial judges in the role of "gatekeeper[s] in determining whether to admit or exclude expert evidence" in accordance with Rule 702. The *Daubert* Court "held that Federal Rule of Evidence 702 commands the primary focus for courts evaluating the admissibility of expert testimony." *Cooper v. Brown* (9th Cir. 2007) 510 F.3d 870, 942.

The testimony of an expert is only admissible (1) if the expert has sufficient expertise under Rule 702(a), (2) the testimony is relevant, and (3) the testimony is reliable. *See Daubert*, 509 U.S. at 589. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Unrein v. Timesavers, Inc.* (8th Cir. 2005) 394 F.3d 1008, 1011.

Dr. Brage's two-page "Narrative Report" ("Report") dated October 1, 2019, was previously produced to Defendants. (Attached to the Toliver Dec. as Exhibit "D" is a true and correct copy of Dr. Brage's report.) In the second paragraph of the Report, Dr. Brage stated:

"I am providing a summary of my medical treatment for your client Allison Randal. ***I would like to state again that I am not an expert witness***. I am simply a treating physician that is providing a summary of my care. I can also provide some ideas regarding future medical treatment."

[Emphasis added.] In addition, in the third paragraph on the second page of the Report, Dr. Brage stated unequivocally:



LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

"I was provided a disk of medical information on this patient. My interest was to see if there were any actual radiographs on it. There were no radiographs on the disk. I did not read any of the physical therapy notes or further medical treatment that she has done with future providers."

Dr. Brage acknowledged himself that he was not "an expert witness" and was providing "some ideas" for Plaintiff's future medical treatment. At that time Dr. Brage had last seen Plaintiff in September of 2016 – "this was the last visit I had with the patient." He did not review any radiographs to ascertain pre- or post-existing conditions of Plaintiff's hindfoot. Dr. Brage did not review Plaintiff's post-surgery extensive physical therapy notes or her further medical treatment. Yet, he continued to provide "some ideas" for Plaintiff's future medical treatment.

We should trust Dr. Brage when he says: "I would like to state again that I am not an expert witness." Therefore, Dr. Brage should not be regarded as a medical expert witness and his "ideas" about Plaintiff's future medical treatment should be excluded.

In order to be admissible under the guidelines of *Daubert*, an expert's testimony must "fit." *See Daubert*, 509 U.S. at 581. In other words, it must be relevant, and "logically advanc[e] a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm.,* Inc. (9th Cir. 1995) 43 F.3d 1311, 1315 (*Daubert II*). The Washington Supreme Court has held:

> [E]xpert testimony is required when an essential element in the case is best established by an opinion which is beyond the expertise of a layperson. Medical facts in particular must be proven by expert testimony unless they are observable by [a layperson's] sense and describable without medical training. Thus, expert testimony will generally be necessary to establish the standard of care, and most aspects of causation.

*Harris v. Robert C. Groth, M.D., .S.* (1983) 99 Wn.2d 438, 449 (citations removed).

The medical testimony must be based on a reasonable degree of medical certainty according to the facts of the case, as opposed to unsupported speculation. *McLaughlin v. Cooke* (1989) 112 Wn.2d 829, 836, 774 P.2d 1171. The testimony of a medical expert is not probative and therefore inadmissible unless it meets the "more probable than not" standard required of all expert testimony. *O'Donohue v. Riggs* (1968) 73 Wn.2d 814, 824, 440 P.2d 823.

Here, after stating that he did not review any actual radiographs, Plaintiff's physical therapy notes, or her further medical treatment, Dr. Brage continued in his October 2019 Report to

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

provide "some ideas" for Plaintiff's future medical treatment on the second page of the Report:

> "It is common that she *may* need intra-articular injections in either her subtalar joint or ankle as part of pain relief treatments for arthritis. Should the arthritis progress …, she *may* require surgery. For the subtalar joint, a subtalar arthrodesis is performed."

[Emphasis added.]

Further Dr. Brage continued in the next paragraph:

> "Should that surgery be performed, it is also well-known that, over time, that the ankle joint will begin some arthritic change and that can continue for decades. As in her subtalar joint, she *may* require non-steroid anti-inflammatories, bracing, injections and then surgery for her ankle."

[Emphasis added.]

In his October 2019 report, Dr. Brage uses the conditional word "may" in several places. The use of the word "may" to describe Plaintiff's potential future medical treatment indicates that his "ideas" regarding her potential future medical treatment does not meet "reasonable medical certainty" standard for an expert testimony because the word means that something is possible but not probable or certain.

In March 2020, Defendants filed a motion in limine to exclude Dr. Brage from being called as an expert witness, based on his assertion in October 2019 that he was not acting as an expert witness for Plaintiff and that he had not examined the Plaintiff, nor reviewed any of her treatment records since 2016. Apparently in response to Defendants' motion in limine, Dr. Brage provided an additional report in March 2020, in which he once again stated that he is not an expert witness, he is just a treating physician. He added the statement to the March 2020 report that: "All of my opinions given in this letter are on a more probable than not basis." However, the statement of Dr. Brage's "ideas" regarding Plaintiff's potential future medical/surgical care contained in the March 2020 report are still stated in the exact same terms, including the use of the same conditional words "may" and "should," as used in his October 2019 report. (Attached to the Toliver Dec. as Exhibit "E" is a true and correct copy of Dr. Brage's report dated March 17, 2020.)

As noted above, Dr. Brage stated in both of his "Narrative Reports" that he was only providing a summary of Plaintiff's medical treatment, that he was not an expert witness, and that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1    he could provide possible "ideas" regarding future medical care.

2         Dr. Brage's "ideas" in both of his Narrative Reports use the words "may" and "should"

3    regarding Plaintiff's possible future treatments, which Defendants anticipate he will once again

4    use during his perpetuation testimony to be used at trial, and therefore Dr. Brage's "ideas" do not

5    meet the "reasonable degree of medical certainty" standard for expert medical testimony because

6    these events are not probable or certain.

7         Further, as of March 2020, Dr. Brage had not examined Plaintiff nor reviewed any of her

8    medical records since he last treated her in September 2016.  Therefore, given his lack of

9    information regarding Plaintiff's current condition, Dr. Brage's "ideas" regarding Plaintiff's future

10    medical treatment as stated in his March 2020 report are not reliable under *Daubert* and should be

11    excluded.

12         Defendants have recently been provided with some medical records indicating that

13    Plaintiff may have been examined by Dr. Brage in June 2020.  However, Defendants have not

14    received any updated reports from Dr. Brage indicating whether he is still **not** acting as Plaintiff's

15    expert and whether his "ideas" regarding Plaintiff's future medical treatment are still just "ideas"

16    couched in the same conditional language using the words "may" and "should."

17         Therefore, since the last report Defendants have regarding Dr. Brage's expected testimony

18    regarding Plaintiff's future medical treatment does not meet the relevancy and reliability standard

19    under *Daubert*, it should be excluded.

20         2.    <u>*The Testimony of Dr. Schuster, John Cary and William Brandt Is Not Reliable.*</u>

21

22         Defendants anticipate that Dr. Schuster, Cary, and Brandt will all base their trial testimony

23    on the unreliable "ideas" provided by Dr. Brage in his Narrative Reports.

24         An expert's testimony which relies on another expert's theories that have been excluded as

25    unreliable may be excluded.  For example, in *In re Cathode Ray Tube (CRT) Antitrust Litigation*,

26    Case No. C-07-5944, 2017 WL 10434367, *2 (N.D.Cal. Jan. 23, 2017), the court stated "Where an

27    expert bases her opinion on – or simply repeats – the unreliable opinion of another expert, a

28    district court may properly exclude the first expert's testimony.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

In Dr. Schuster, Cary's, and Brandt's reports, they all form opinions based on Dr. Brage's unreliable "ideas" of Plaintiff's potential future treatment. Therefore, all of those experts' opinions which are based on Dr. Brage's "ideas" must also be excluded.

### 3. Dr. Schuster is not a Qualified Expert in this Case and his Testimony is Also Cumulative.

The testimony of an expert is only admissible (1) if the expert has sufficient expertise under Rule 702(a), (2) the testimony is relevant, and (3) the testimony is reliable. *See Daubert*, 509 U.S. at 589.

Dr. Schuster's testimony and report regarding Plaintiff's need for future surgery is not relevant nor reliable because Dr. Schuster is not qualified to make such an opinion. Dr. Schuster is not a surgeon and admits that he is not a surgeon in his deposition testimony in the case of *Mary Whittenberg v. Live Nation Worldwide, et al.*, Superior Court of Washington in and for King County, No.16-2-29490-1 KNT. (Attached to the Toliver Dec. as Exhibit "F" are true and correct copies of the relevant pages of Dr. Schuster's deposition.) Dr. Schuster stated under oath, at 5:9-15, that he "is not a surgeon." In fact, when Dr. Schuster is not performing Independent Medical Examinations, Dr. Schuster is continuing with his practice of general internal medicine and physiatry only, not surgery. (See, Exhibit "F" at 5:12-15).

In order for expert testimony to be admissible under *Daubert,* an expert's testimony must "fit". *See Daubert,* 509 U.S. at 581. As Dr. Schuster has admitted under oath that he is **not** a surgeon, Dr. Schuster's opinion as to the need for surgery does not fit with his experience and lack thereof.

In spite of his lack of expertise as an orthopedic foot and ankle surgeon, Defendants anticipate that Dr. Schuster will attempt to offer opinions at trial that Plaintiff will more likely than not require additional future surgery on her foot and ankle, with attendant medical expenses and life care costs related to those surgeries.

Under Federal Rules of Evidence 702, an expert witness must be qualified as an expert based on the expert's knowledge, skills, experience, training, or education to testify in the form of an opinion. Dr. Schuster is not qualified to provide any opinions regarding whether and what type


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

1   of future surgical treatment Plaintiff may need regarding her heel injury, and any life care plan

2   items Plaintiff may need because he is not a foot and ankle orthopedic surgeon.  Therefore,

3   Plaintiff must be precluded from calling Dr. Schuster to testify as an expert witness at the trial of

4   this matter.

5       Further, if the Court is inclined to allow Dr. Schuster to testify as an expert witness at trial,

6   both Dr. Brage and Dr. Schuster have been disclosed to testify regarding Plaintiff's damages,

7   treatment, permanency of injuries, and future treatment and prognosis.  Calling two expert

8   witnesses to offer opinions of the same matters would cause undue delay, waste time, and

9   needlessly present cumulative evidence in violation of Fed. R. Evid. Rule 403.

10      Further, LCR 43(j) mandates that a party shall not be permitted to call more than one

11  expert on any subject.  Since Plaintiff is attempting to call two experts, Dr. Brage and Dr. Schuster

12  regarding the same subjects, Plaintiff must be required by the Court to select just one of these

13  physicians to testify as her medical expert at trial.

14  **IV.  DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED TRIAL EXHIBITS**

15      In Plaintiff's Pretrial Statement served August 28, 2020, she did not disclose that she

16  intended to introduce any exhibits at trial.  (Exhibit "A" to the Toliver Dec.)  On September 17,

17  2020, during the meet and confer telephone conference required by LCR 16, Plaintiff's counsel

18  confirmed that she did not intend to introduce any exhibits at trial, except that she intended to use

19  some demonstrative exhibits, which she said she intended to provide to Defendants' counsel a few

20  days before the commencement of trial.  (Toliver Dec., para. 8.)

21      On September 23, 2020, [during the meet and confer process during which the parties

22  attempted to come to an agreed Pretrial Order ("PTO")], Plaintiff's counsel disclosed in her

23  revised version of the PTO the demonstrative exhibits Plaintiff intends to use at trial and emailed

24  Defendants' counsel a link to review copies of them.  (Attached to the Toliver Dec. as Exhibit "G"

25  is a true and correct copy of Plaintiff's red-lined revised PTO; para. 9.)  Plaintiff's counsel also

26  disclosed that she intends to introduce three YouTube videos of Plaintiff giving seminars as

27  exhibits at trial. (Toliver Dec., para. 11.)  This was the first time Defendants counsel had been

28  provided with notice of exhibits which  Plaintiff intends to use for any purpose at trial.  (Toliver

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

Dec., para. 12.)

Defendants object to the use of all of Plaintiff's proposed demonstrative exhibits at trial as they were not timely disclosed in her Pretrial Statement, as required by LCR 16 (h)(6). Further, this is a bench trial, not a jury trial, so there is no need for demonstrative evidence.

Defendants also make the following additional objections to each of Plaintiff's exhibits:

a. Demonstrative Exhibit 1: Illustration of Plaintiff's Keynote Travel.

There is no foundation for this document (Rule 602), and it is a misleading and improper summary pursuant to Rule 1006. Further, Plaintiff did not produce any documents attempting to establish her "work travel" during discovery, so she cannot use this document to summarize, even as a "demonstrative exhibit," information which was never provided to Defendants. (Toliver Dec., para. 13.)

b. Demonstrative Exhibits 2 (John Cary Life Plan) and 3 (William Brandt Economic Analysis).

Defendants object to these demonstrative exhibits as they are hearsay (Rule 802), they require expert testimony (Rules 702 and 703), and they are cumulative and will waste the Court's time (Rule 403), as Plaintiff disclosed in her Pretrial Statement that both Cary and Brandt will be called to testify at trial. (Exhibit "A", Toliver Dec.)

c. Demonstrative Exhibits 4 (Illustration of Mechanism of Event) and 6 (Illustration of Mechanism of Injury).

Defendants object to these demonstrative exhibits as they are irrelevant (Rule 402) and will waste the Court's time and cause unfair prejudice to Defendants (Rule 403), as liability has been admitted. Further, there is no foundation for these exhibits (Rule 602), they are hearsay (Rule 802), they call for expert testimony (Rules 702 and 703), and Plaintiff has not disclosed any experts to testify regarding these exhibits. Additionally, these exhibits were not produced to Defendants during discovery. (Toliver Dec., para. 14.)

d. Demonstrative Exhibit 5 (Photographs of Trips with Martin "Max" Randal); Exhibit 7 (Illustration of Plaintiff's Family Tree); Exhibit 8 (Photographs of Plaintiff from Mt. St. Helens, Sudan and Australia); Exhibit 9 (Photograph of Plaintiff's TENS Unit) and Exhibit


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

10 (Photographs of Plaintiff's Family.)

Defendants object to these demonstrative exhibits as they are irrelevant (Rule 402) and will waste the Court's time and cause unfair prejudice to Defendants (Rule 403).   Additionally, these exhibits were not produced to Defendants during discovery.  (Toliver Dec., para. 14.)

e.  Exhibit 10: YouTube Clips of Plaintiff's Keynotes Prior to and After Subject Collision.

Defendants will stipulate to the use of the first two YouTube videos listed as exhibits, but the third one (https://www.youtube.com/watch?v=cTIIAbdJ5ys&t=4s), is no longer available, according to the YouTube site and therefore cannot be used by Plaintiff.

## V.  DEFENDANTS' EXHIBITS

Defendants do not intend to offer any of their own exhibits at trial but reserve the right to introduce exhibits for rebuttal and impeachment purposes as necessary.

## VI.  DEFENDANTS' EXPERT AND LAY WITNESSES

Defendants have not retained any experts in this matter and do not intend to call any lay witnesses at trial, but reserve the call rebuttal and/or impeachment witnesses as necessary, including any witnesses disclosed by Plaintiff.

## VII.  CONCLUSION

For the reasons set forth above, Plaintiff cannot recover from Defendants the amount of damages claimed.

LEWIS BRISBOIS BISGAARD & SMITH


/s/ Shawn A. Toliver
Shawn A. Toliver, *Pro Hac Vice*
Shawn.Toliver@lewisbrisbois.com

2185 N. California Blvd., Ste. 300
Walnut Creek, CA  94596
Telephone:  (925) 357-3456
Facsimile:   (925) 478-3260

*Attorney for Defendants XPO Logistics, Inc.*
*and Michael D. Michelena*

LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MERRICK, HOFSTEDT & LINDSEY, P.S.

_/s/ Thomas J. Collins_
Thomas J. Collins, WSBA # 2157
tcollins@mhlseattle.com

_/s/ Christopher A. Campbell_
Christopher A. Campbell, WSBA #50959
ccampbell@mhlseattle.com

3101 Western Avenue, Suite 200
Seattle, WA 98121
Telephone: (206) 682-0610
Facsimile: (206) 467-2689

_Attorney for Defendants XPO Logistics, Inc. and
Michael D. Michelena_



LEWIS, BRISBOIS, BISGAARD & SMITH
ATTORNEYS AT LAW
2185 N. CALIFORNIA BLVD, STE. 300
WALNUT CREEK, CALIFORNIA 94596